IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 8, 2013

**STATE OF TENNESSEE v. JASON LEE FISHER**

**Appeal from the Circuit Court for Marshall County**
**Nos. 11-CR-103, -104, -105, -106     Robert G. Crigler, Judge**

**No. M2013-00220-CCA-R3-CD   Filed October 29, 2013**

Appellant, Jason Lee Fisher, stands convicted of four counts of aggravated burglary, three counts of theft of property valued at $1,000 or more but less than $10,000, one count of theft of property valued at more than $500 but less than $1,000, and three counts of vandalism valued at $500 or less.  The trial court sentenced appellant as a career offender to an effective sentence of forty-five years.  On appeal, he challenges the sufficiency of the convicting evidence and the effective length of his sentence.  Following our review, we affirm appellant's convictions and sentences but remand to the trial court for entry of a corrected judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;**
**Remanded for a Corrected Judgment**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Donna Orr Hargrove, District Public Defender; Michael J. Collins (on appeal and at trial) and William Joseph Harold (at trial), Assistant District Public Defenders, for the appellant, Jason L. Fisher.

Robert E. Cooper, Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Robert J. Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case concerns the aggravated burglary, theft, and vandalism of four homes between September 23 and October 2, 2011.  A Marshall County grand jury indicted appellant separately in each of the incidents.  In case number 11-CR-103, the grand jury

indicted appellant for one count of aggravated burglary, two counts of theft of property valued at $1,000 or more, and one count of vandalism valued at $500 or less. In case number 11-CR-104, appellant was indicted for one count of aggravated burglary and two counts of theft of property valued at $1,000 or more. In case number 11-CR-105, the grand jury indicted appellant for one count of aggravated burglary, two counts of theft of property valued at $1,000 or more, and one count of vandalism valued at $500 or less. In case number 11-CR-106, appellant was indicted for one count of aggravated burglary, two counts of theft of property valued at more than $500, and one count of vandalism valued at $500 or less. The trial court consolidated the cases for trial, and appellant was convicted as charged. Because the two theft charges in each of the cases numbered 11-CR-103, 11-CR-104, and 11-CR-105 were based on alternative theories, the court merged the two counts of theft of property valued at $1,000 or more within each case. Similarly, in case number 11-CR-106, the court merged the two counts of theft of property valued at more than $500.

## I. Facts

At appellant's trial, Megan Pingle testified that she and her husband, John Pingle, were renting a house located at 1308 Woodbridge Drive in Marshall County in September 2011. They were in the process of moving, so they had their belongings in boxes. Mrs. Pingle went to her house on the evening of September 27, 2011, and noticed footprints on the floor, an open window, and a mangled window screen. She did not see anyone inside the house. Mrs. Pingle observed that a pistol, some camping supplies, a DVD player, a laptop computer, and a camcorder were missing from her home. She called her husband and the police to report the incident. Mrs. Pingle testified that the estimated value of the items was $2,200.

In October 2011, Mr. and Mrs. Pingle went to the sheriff's department and identified a number of items, including a laptop, a camcorder, Mr. Pingle's work jacket, and a University of Georgia sweatshirt, as some of their missing property. The pistol and some of the camping supplies were not recovered. Mrs. Pingle testified that at the time of the burglary, she did not know appellant and had not given him permission to enter her home or take any items therefrom.

Lucas Sullivan testified that in September 2011, he, his wife, and his two children lived at 1336 Woodbridge Drive. On September 28, 2011, Mr. Sullivan arrived home from work around 7:00 p.m. and found his back door broken, the inside of the house "ransacked," and several items missing, including a 35 millimeter Canon camera, a Kodak camera, a pocket watch, two jewelry boxes, jewelry, a Playstation, a laptop, and a collection of 250-300 comic books. No one was in the home when he arrived. Mr. Sullivan called the police. He

testified that the stolen items were worth $7,500 and that it cost $400 plus installation fees to have his door repaired.

Mr. Sullivan testified that at the time of the burglary, he did not know appellant and had not given him permission to enter his home. Mr. Sullivan's wife was later called to the police station and identified the Playstation, the comic book collection, one of the jewelry boxes, the laptop, the 35 millimeter Canon camera, the Kodak digital camera, and a small Sentry firebox safe containing memory cards or flash drives as items removed from their home. Mr. Sullivan testified that his pocket watch was not recovered.

Oliver Hairston testified that in September 2011 he lived at 1301 Woodbridge Drive. He stated that on September 30, 2011, a Marshall County detective called him and asked him to return home because his home had been burglarized. Prior to the call, Mr. Hairston was last at home Monday, September 26, 2011, because he stayed with his girlfriend during the week. When Mr. Hairston arrived at his home, he noticed that the window in the back door was broken and that a rock was lying by the door. He also observed that the drawers to his furniture were open and that items were missing, including a television, a satellite receiver, musical equipment, clothing, boots, camping equipment, a snowboard, and snow boots. Mr. Hairston testified that the items' total value was about $2,500 and that it cost $250 to replace his door. Mr. Hairston testified that he did not know appellant at the time of the burglary and had not given appellant permission to enter his home or remove items.

In October 2011, the police called Mr. Hairston to come to the police station to view items that had been recovered after a search. Mr. Hairston identified a snowboard, snow boots, two pairs of cowboy boots, a jacket, and a Playstation 2. Mr. Hairston testified that his music equipment was not recovered.

On cross-examination, Mr. Hairston stated that he did not see who removed the property from his home. He also explained that his television weighed between sixty and seventy pounds and that some of his music equipment weighed around fifty pounds.

Linda Anderson testified next and stated that in October 2011, she lived at 1316 Woodbridge Drive with her three children. After returning home on October 2, 2011, at around 7:00 p.m., Ms. Anderson's son found that the back door had been damaged and the house had been "ransacked." Ms. Anderson returned home and also noticed that a number of items were missing, including a small gun safe, jewelry, a coin collection, money, and a watch. Ms. Anderson testified that it cost $200 to repair her door. She had estimated at the time of the theft that the stolen property's value was between $500 and $1,000; however, she indicated at trial that she believed that the property was worth more than $1,000. Ms. Anderson testified that she did not know appellant at the time of the burglary and did not give

him permission to enter her home or remove any items. In October 2011, Ms. Anderson went to the police station and identified the gun safe, some jewelry, a number of coins, and a watch as belonging to her. Some of the coins were not recovered.

Jimmy Oliver, a detective with the Marshall County Sheriff's Department, testified that he investigated these four burglaries and that the burglaries all took place in the same neighborhood between September 26 and October 2, 2011. In all four cases, the burglar entered through the back of the home. Officers determined that the burglar most likely lived in the neighborhood.

On October 3, 2011, Detective Oliver and Captain Bob Johnson visited Ms. Anderson's home. As they were leaving, Detective Oliver noticed a vehicle without tags parked on the street. As the officers spoke with Ms. Anderson, someone drove the vehicle out of the Woodbridge neighborhood and then returned minutes later. Detective Oliver testified that he initiated a stop based on the car's missing tags. Detective Oliver and Captain Johnson approached the car and spoke with appellant. Appellant did not have a valid driver's license, so the officers arrested appellant and performed an inventory search of appellant's car. During the search, the officers found a Canon camera, which appellant stated he purchased on eBay. Ms. Sullivan later identified the camera as the Canon camera stolen from her home.

Detective Oliver and Captain Johnson later interviewed appellant and asked him about the camera. Appellant admitted that he had acted as a lookout during the burglaries but stated that he had not entered the homes. Appellant claimed that Terry Besherse committed the burglaries and gave appellant the camera. After the officers asked appellant if there were other stolen items at his home, appellant responded that the officers might find some things. Appellant stated that he lived with his mother on Woodbridge Drive.

After obtaining consent from appellant's mother to search her home, Detective Oliver searched appellant's bedroom on October 3, 2011, and found items from all four of the burglaries. The search was conducted eight days after the first burglary and within forty-eight hours of the last burglary.

Detective Oliver searched for Terry Besherse but was unable to locate him. Detective Oliver spoke with appellant again, and appellant admitted that he had made up the name. He then stated that a man named Nickey Huses on Pyles Road committed the burglaries. Detective Oliver was also unable to locate Nickey Huses, but appellant's mother told Detective Oliver that appellant had a cousin named Nick Patterson, whose father-in-law lived on Pyles Road. Detective Oliver testified that he determined that Mr. Patterson was not involved in the burglaries.

Detective Oliver testified that he spoke with appellant a third time, and appellant claimed that Josh Johnston from Murfreesboro committed the burglaries. He stated that he could prove Mr. Johnston was involved because Mr. Johnston had thrown some of the stolen items over a fence at a car wash in La Vergne. Appellant also told Detective Oliver that Mr. Johnston was planning to rob a bank in Eagleville. Detective Oliver testified that police officers recovered several of the stolen items at the car wash.

Detective Oliver determined that Mr. Johnston was on parole and managed a tattoo shop. Officers searched Mr. Johnston's person, car, and home, as well as Brian Parrish's home, who was a friend of Mr. Johnston. The police officers did not find any of the stolen property.

On October 10, 2011, Detective Oliver spoke with appellant again. In this interview, appellant stated that Mr. Johnston had thrown a trash can from one of the burglaries out by a BP station on Caney Springs Road. Detective Oliver located the trash can and determined it belonged to Mr. Sullivan.

On cross-examination, Detective Oliver testified that eighty to ninety percent of burglaries are committed by either kicking in the back door, front door, or "busting open" a window. He stated that Mr. Johnston was on parole from either drug charges or theft charges. Detective Oliver explained that it is common for an arrestee to give a false statement during their first interview. Detective Oliver also conceded that items such as the stolen 46-inch television were difficult for one person to move. Detective Oliver did not find any fingerprints at the scenes of the burglaries. Detective Oliver also stated that neither the BP station nor the car wash was near Mr. Johnston's home. He stated that the car wash was twenty to twenty-five minutes from Mr. Johnston's home and about forty-five minutes from appellant's home.

On redirect examination, Detective Oliver testified that while it was normal for an arrestee to lie to him one time, it was unusual for an arrestee to lie multiple times. He also stated that fingerprints were hard to find at a crime scene and that a person could wear gloves to prevent leaving fingerprints. Detective Oliver found latex gloves in appellant's car.

Tony Nichols testified next that he was a detective with the Marshall County Sheriff's Office in September and October of 2011. He stated that on September 27, 2011, he went to John and Megan Pingle's home to complete an initial report on a burglary. The Pingles told Detective Nichols that the burglary occurred between the morning hours of September 26, 2011, and the evening hours of September 27, 2011. Mr. and Mrs. Pingle gave Detective Nichols a list of the missing items and estimated the items value to be over $1,000.

Detective Nichols testified that he participated in searching appellant's bedroom and that there were items from all four of the burglaries in appellant's bedroom. Detective Nichols testified that on October 4, 2011, he went to the La Vergne car wash, indicated by appellant, and found a fireproof safe with items inside, including flash drives, memory cards, and CDs. The fireproof safe belonged to Mr. and Mrs. Sullivan. Detective Nichols also conducted the search on Josh Johnston's car and residence, in which no stolen property was recovered.

On October 5, 2011, Detective Nichols returned to the home of appellant's mother because she had found more property in her home that did not belong to her or her son. He testified that he collected a car stereo, pellet rifle, and a camera. These items did not belong to any of the victims in this case.

On October 10, 2011, appellant told officers there was more stolen property near the BP station in Chapel Hill. Detective Nichols located a trash can, cell phones, a camcorder, a camera, and a jewelry box at the car wash and identified it as some of the stolen property belonging to the victims.

Bob Johnson testified that he was a captain over the detective division of the Marshall County Sheriff's Department. He stated that he was one of the first responding officers to the Anderson burglary. Captain Johnson described the damage to Ms. Anderson's residence. The back door was kicked in, and the home was "ransacked." He stated that the burglar must have been inside the home for quite some time and that it was not a quick burglary. Captain Johnson testified that he also found a camera in appellant's car, which was later identified as belonging to Mr. and Mrs. Sullivan.

Pamela Fisher, appellant's mother, testified that between September 26 and October 2, 2011, appellant lived with her on Woodbridge Drive. She stated that around 5:30 p.m. on Wednesday, September 28, 2011, she picked up appellant at Stones River Mall in Murfreesboro. She and appellant returned home around 7:00 p.m., and appellant stayed at her home that night. She did not see appellant before leaving for work on September 29, 2011, but she saw appellant that evening around 5:45 p.m. Ms. Fisher stated that appellant left her home on Thursday and was not present on September 30 or October 1, 2011. She also testified that during this time, appellant bought an older model car, which she first saw on Sunday, October 2, 2011.

On cross-examination, Ms. Fisher was shown a receipt from the Knights Inn in Murfreesboro, showing that appellant had rented a room on September 29, 2011, after 3:00 p.m. She stated that appellant left her home around 7:00 p.m. on September 29, 2011, and must have rented the room after he departed. Ms. Fisher conceded that she could not account

for appellant's whereabouts on September 26, 27, and 30 or October 1. She stated that appellant returned home during the night of October 1, 2011, and was there when she awoke on Sunday, October 2, 2011. Appellant had a car when he returned. Ms. Fisher also acknowledged that appellant was unemployed and that he had purchased clothes and shoes at the mall before she picked him up on September 28, 2011.

Appellant testified on his own behalf at trial. He stated that on September 26, 2011, he attended a funeral with a friend. He explained that he returned to his mother's home on September 28, 2011, after his mother picked him up at the mall. He testified that Josh Johnston committed the burglaries and that he had acted as lookout during two of the burglaries. Appellant stated that he gave Mr. Johnston the key to his mother's home so Mr. Johnston could put the stolen goods in appellant's room. Appellant claimed he did not know the location of the stolen property that had not been recovered by the police. Appellant testified that Mr. Johnston disposed of the stolen property at the car wash and that appellant threw out the property recovered from the BP station.

On cross-examination, appellant admitted lying to the police about how he obtained the camera found in the trunk of his car and about who committed the burglaries. He also stated that he was walking up and down the street during the burglaries because he did not want to be involved in the burglaries. He testified that Mr. Johnston and "another guy" committed the burglaries. On re-direct, appellant testified that he was at the mall shopping when the September 28 burglary took place. He stated that on September 29, 2011, he checked into the Knights Inn around 11:30 p.m.

The jury found appellant guilty as charged. At the sentencing hearing, the trial court found that appellant was a career offender under Tennessee Code Annotated section 40-35-108, based on his past convictions. The trial court considered Tennessee Code Annotated section 40-35-115 when determining whether appellant's sentences should run concurrently or consecutively and concluded that appellant's criminal history was extensive, especially in light of the current case. The court merged appellant's two theft convictions within each of the four cases because the two counts of theft were based on alternative theories. The trial court sentenced appellant to fifteen years for each of the four counts of aggravated burglary, twelve years for each of the three counts of theft of property valued at $1,000 or more but less than $10,000, six years for the count of theft of property valued at more than $500 but less than $1,000, and eleven months and twenty-nine days for each of the three counts of vandalism valued at $500 or less. The court then determined that three of appellant's four aggravated burglary charges would run consecutively and that all the other charges would run concurrently for a total effective sentence of forty-five years at sixty percent.

## II. Analysis

Appellant argues that the evidence presented at trial is insufficient as a matter of law to support his convictions for aggravated burglary, theft, and vandalism. He also argues that the sentence imposed by the trial court was excessive and contrary to the law. The State responds that appellant's convictions and sentences are valid under the law. We agree with the State.

## A. Sufficiency of the Evidence

Appellant argues that the evidence at trial was insufficient to support his convictions for aggravated burglary, theft, and vandalism. Specifically, he contends that there was no direct evidence that he participated in all of the offenses and that Mr. Johnston was the person who committed the burglaries. The State responds that the evidence was sufficient to sustain appellant's convictions. We agree with the State.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of

innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To sustain a conviction for aggravated burglary, the State must prove beyond a reasonable doubt that appellant committed the burglary of a habitation. Tenn. Code Ann. § 39-14-403(a). "A person commits burglary who, without the effective consent of the property owner . . . [e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault." *Id.* § 39-14-402(a)(1). Burglary can be proven through direct or circumstantial evidence. *See State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993).

To support a conviction for theft of property, the State must prove that appellant, "with intent to deprive the owner of property, . . . knowingly obtain[ed] or exercise[ed] control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). Theft of property valued at $1,000 or more but less than $10,000 is a Class D felony. Tenn. Code Ann. § 39-14-105(a)(3). Theft of property valued at more than $500 but less than $1,000 is a Class E felony. *Id.* § 39-14-105(a)(2).

A person commits vandalism when they "knowingly cause[] damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent . . . ." *Id.* § 39-14-408(a). "Damage" encompasses both destroyed property and property that has been tampered with, causing "pecuniary loss or substantial inconvenience to the owner or a third person." *Id.* § 39-14-408(b)(1)(A) & (B).

A jury convicted appellant of four counts of aggravated burglary, six counts of theft of property valued at $1,000 or more, two counts of theft or property valued at more than $500, and three counts of vandalism valued at $500 or less. Viewed in the light most favorable to the State, the evidence supports these convictions.

The evidence at trial showed that between September 27, 2011, and October 2, 2011, a burglar entered four unoccupied homes in appellant's neighborhood through either a back door or window and stole a number of items from each home. Four of the victims testified as to the value of the goods stolen from their homes as follows: Megan Pingle estimated $2,200; Lucas Sullivan approximated $7,500; Oliver Hairston calculated $2,500; and Linda Anderson estimated between $500 and $1,000. In addition, three of the homes sustained damage during the burglaries that required repair: $400 to replace Mr. Sullivan's door; $250 to replace Mr. Hairston's door; and $200 to repair Ms. Anderson's door. All four victims testified that they did not give appellant consent to enter their homes or remove any property.

Appellant was apprehended with a Canon camera, identified by Mrs. Sullivan as an item stolen from her home, in his car. A search of appellant's home revealed a large number of the stolen items stored in appellant's bedroom. Appellant directed police officers to a car wash and a BP gas station where more stolen items were found. In addition, appellant testified that he was unemployed, yet he purchased a car, rented a hotel room, and bought clothing during the five-day time period of these burglaries. During the police investigation, appellant conceded that he was involved in the burglaries by acting as a lookout and by storing the stolen goods in his bedroom. This evidence, in conjunction with appellant's repeated lies and misdirection to police officers about other possible suspects and the origins of the recovered items, support appellant's convictions. From this proof, any rational jury could have found appellant guilty of aggravated burglary, theft, and vandalism beyond a reasonable doubt.

Appellant argues that there is no direct evidence of his participation of the burglaries and that the burglaries were, in fact, committed by Mr. Johnston. However, a conviction for burglary can be established through either direct or circumstantial evidence; therefore, an eyewitness placing appellant at the scene of the burglaries is not required under the law. *See Holland*, 860 S.W.2d at 59. In addition, the State presented evidence that officers searched Mr. Johnston's person and home as well as Mr. Parrish's home, who was a friend of Mr. Johnston. They did not find any evidence that Mr. Johnston was involved in the burglaries. In a jury trial, all factual disputes raised by the evidence are resolved by the jury as trier of fact, and we will not substitute our own inferences drawn from the evidence for those drawn by the jury . *Bland*, 958 S.W.2d at 659; *Pruett*, 788 S.W.2d at 561. Appellant is without relief as to this issue.

## B. Sentencing

Appellant argues that his sentence is "excessive and contrary to the law." The State responds that based on appellant's convictions and prior history, appellant's sentence is proper. We agree with the State.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -210(b); Tenn. Code Ann. § 40-35-114. In addition, "[t]he sentence

imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Pursuant to the Sentencing Act, "[a] defendant who is found by the court beyond a reasonable doubt to be a career offender shall receive the maximum sentence within the applicable Range III." Tenn. Code Ann. § 40-35-108(c). A career offender is:

> [A] defendant who has received [a]ny combination of six (6) or more Class A, B or C prior felony convictions, and the defendant's conviction offense is a Class A, B or C felony; [a]t least three (3) Class A or any combination of four (4) Class A or Class B felony convictions if the defendant's conviction offense is a Class A or B felony convictions if the defendant's conviction offense is a Class A or B felony; or [a]t least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony."

*Id*. § 40-35-108(a). The trial court found that appellant was a career offender under this statute for each felony conviction, and after a review of the record, we agree. Therefore, Tennessee Code Annotated section 40-35-108(c) mandates that appellant receive the maximum sentence for each of his convictions. The only issue is whether the sentences should run concurrently or consecutively.

The trial court found that appellant's criminal history was extensive, especially in light of the current case. Pursuant to Tennessee Code Annotated section 40-35-115, the trial court "may order sentences to run consecutively if the court finds by a preponderance of the evidence that . . . [appellant] is an offender whose record of criminal activity is extensive." *Id*. § 40-35-115(b)(2). Appellant's prior convictions and career offender status support the trial court's finding; therefore, the trial court did not abuse its discretion by determining that

three of appellant's four burglary convictions should run consecutively. Appellant has failed to show that his effective sentence was erroneous.

## C. Judgments

Although not asserted by either party in this case, we note that there is a clerical error on the judgment in case number 11-CR-104 on Count Two, theft of property valued at $1,000 or more. Theft of property valued at $1,000 or more is a Class D felony. Tenn. Code Ann. § 39-14-105(a)(3). Therefore, his applicable sentencing range was "not less than eight (8) nor more than twelve (12) years." *Id.* § 40-35-112(c)(4). The court must "impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career or repeat offender." *Id.* § 40-35-210(c)   As stated above, appellant was sentenced as a career offender and, therefore, must receive the maximum sentence within Range III for each conviction. *Id.* § 40-35-108(c). However, the sentence length on the judgment form is marked as six years.

This court has stated that for a judgment to be remanded to the trial court for correction based on a clerical error:

> [T]he record in the case must show that the judgment entered omitted a portion
> of the judgment of the court or that the judgment was erroneously entered.
> The most reliable indicator that clerical error was made is the transcript of the
> hearing or other papers filed in connection with the proceedings which show
> the judgment was not correctly entered.

*Sate v. Jack Lee Thomas, Jr.*, No. 03C01-9504-CR00109, 1995 WL 676396, at *1 (Tenn. Crim. App. Nov. 15, 1995). After reviewing the record, it is clear that the court's marking six years rather than twelve years is merely a clerical error, not a void judgment, because the trial court at the sentencing hearing stated that the sentence imposed on Count Two is twelve years. "When there is a conflict between the transcript and the judgment form, the transcript controls." *State v. Brent Rowden*, No. M2012-01683-CCA-R3-CD, 2013 WL 4774131, at *12 (Tenn. Crim. App. Sept. 5, 2013). Pursuant to Rule 36 of the Tennessee Rules of Criminal Procedure, "the court may at any time correct clerical mistakes in judgments." Tenn. R. Crim. P. 36. Therefore, we remand this case to the trial court for entry of a corrected judgment reflecting appellant's twelve-year sentence in Count Two of case number 11-CR-104.

## CONCLUSION

Based on the parties' arguments, the record, and the applicable law, we affirm appellant's convictions and sentence but remand for entry of a corrected judgment consistent with this opinion.

_____
ROGER A. PAGE, JUDGE